IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARCIA WILSON, | ) | CIV. NO. 15-00418 BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| vs. | ) | WITH RESPECT TO COUNTS II, |
| | ) | III, AND V |
| STATE OF HAWAII; | ) | |
| STATE OF HAWAII JUDICIARY; | ) | |
| CALVIN CHING; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
WITH RESPECT TO COUNTS II, III, AND V**

## I.       INTRODUCTION.

Plaintiff Marcia Wilson, a former employee with the State of Hawaii judiciary, filed a Complaint asserting discrimination and retaliation claims under Title VII and a claim under the Equal Pay Act.

Defendants State of Hawaii, State of Hawaii Judiciary, and Calvin Ching seek summary judgment with respect to the remaining Title VII retaliation claims asserted in Counts II and III and the race discrimination claim asserted in

Count V.[1]  Although Wilson filed no timely written opposition to the motion, the

court at the hearing on the motion allowed Wilson to file an opposition to the

motion no later than April 28, 2017.  Wilson did not file that opposition until May

2, 2017.  Nevertheless, in light of Wilson's status as a *pro se* party, the court

declines Defendants' request to strike the untimely opposition.  Having considered

the positions of the parties with respect to the motion for summary judgment, the

court grants the motion.

## II.        BACKGROUND.

Wilson started working for the State of Hawaii judiciary in October

1989 as an SR-8 clerk typist on Maui.  *See* Deposition of Marcia D. Wilson at 15,

ECF No. 43-5, PageID # 282.  Wilson worked on Maui until October 2001, when

she transferred to the State of Hawaii First Circuit Court on Oahu.  At the time of

her transfer, Wilson had been an SR-12 Judicial Clerk II, but took a voluntary

demotion to an SR-8 Clerk Typist II position.  *See* Wilson Depo. at 19-20, PageID

# 286-87; Decl. of Lori Ann M. Okita ¶ 8, ECF No. 43-2, PageID # 259.

---

[1] This court, proceeding with the consent of the parties, *see* ECF No. 14, previously granted partial summary judgment in favor of Defendants with respect to the "respondeat superior claim" asserted in Count I and the Equal Pay Act claim asserted in Count IV.  *See* ECF No. 24.

After several other transfers, Wilson's position was moved to the Files & Services Section pursuant to a judiciary reorganization. *Id.* ¶¶ 11-17. Her direct supervisor there was Laurene Yonesaki. *Id.* ¶ 19. When Yonesaki transferred to another position in the Spring of 2012, the judiciary internally recruited to fill her position, selecting Lynette Leger. *Id.* ¶¶ 20-21, PageID # 261; Wilson Depo. at 58, ECF No. 43-5, PageID # 307 (indicating that Leger became supervisor in September 2012, about six months after Yonesaki's transfer). Wilson and Josie Espinoza had applied for the supervisor position, but were not selected. *See* Wilson Depo. at 57, PageID # 306.

When Wilson did not receive the promotion, she took a week off of work, calling in sick for four days and taking vacation on the fifth day. *See* Wilson Depo. at 67-68, PageID # 313-14. Wilson equated being "upset" at not getting the promotion with being "sick." *Id.* at 68, PageID # 314. Wilson says she took vacation on the fifth day because she knew that, pursuant to her union contract, if she called in sick five or more consecutive working days she would need to get a doctor's note. *Id.* at 69, PageID # 315. The following week, Wilson again called in sick Monday through Thursday. When she tried to take vacation on Friday, Wilson was told she needed to take sick leave. *Id.* at 71, PageID # 316.

Knowing that she needed a doctor's note because she had taken sick leave for 5 or more consecutive days, Wilson called her doctor, explaining what had happened and why she took sick leave, asking the doctor to give her a note. The doctor agreed to give her a note and told her the note would be left "at the desk." *Id.* at 72, PageID # 317. Wilson went to work the following Monday, October 8, 2012, intending to pick up the note at lunchtime. *Id.* at 74, PageID # 319. Wilson's supervisor told Wilson that she needed the note before she would be allowed back at work. *Id.* Wilson left work and caught the bus to her doctor's office, only to find that it was closed for observance of Columbus Day. *Id.* at 76, PageID # 321. When Wilson returned to work, she was told that she needed to go home until she had a doctor's note. *Id.* at 77, PageID # 322. Wilson then left work. While waiting for the bus to take her home, Wilson called the office a number of times. *Id.* at 77-78, PageID # 322-23; ECF No. 43-11, PageID # 361 (letter indicating Wilson called the office 19 times between 8:15 and 1:15). Wilson supposedly made "inappropriate" comments to her supervisor, resulting in her suspension pending an investigation of the matter. *See* Okita Decl. ¶¶ 22-23, ECF No. 43-2, PageID # 261; Oct. 9, 2012, Letter from Okita to Wilson, ECF No. 43-10, PageID # 359.

On January 4, 2013, Wilson dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC"), Number 486-2013-00018, claiming Wilson suffered sex discrimination and retaliation when she was suspended.  *See* ECF No. 43-16, PageID # 384.  Wilson received a notice of her right to sue based on the claims she had made to the EEOC, but she did not timely file suit within 90 days of receiving the notice.  *See* Wilson Depo. at 132-33, ECF No. 43-5, PageID # 341-42.

In a letter dated March 11, 2013, the judiciary informed Wilson that, because of her behavior, "we are contemplating your dismissal . . . effective at the close of business on April 5, 2013."  ECF No. 43-11, PageID # 361.  The letter stated that Wilson had made 19 telephone calls to the judiciary between 8:15 and 1:15 on October 8, 2012, and that this created a "contentious work environment." *Id.*

A meeting was then held on or about March 19, 2013, that provided Wilson with an opportunity to respond to the contemplated dismissal.  After the meeting, Lori Ann M. Okita, the Chief Court Administrator, considered Wilson's contentions but affirmed her dismissal effective April 5, 2013.  *See* ECF No. 43-12, PageID # 363-64.

On April 17, 2013, Wilson dual filed a Charge of Discrimination with the EEOC and the HCRC, Number 486-2013-00231, claiming race and sex discrimination, as well as retaliation based on Defendants' contemplation of her termination. *See* ECF No. 43-16, PageID # 386. Two days later, Wilson received a notice of her right to sue based on the claims she had made to the EEOC. *See* ECF No. 43-16, PageID # 387. Wilson did not file suit within 90 days of receiving that notice.

Wilson's union grieved the termination on her behalf. On June 5, 2015, an arbitrator rescinded the termination, but allowed the judiciary to suspend Wilson for up to 30 days, which it did. *See* Okita Decl. ¶¶ 27-29, ECF No. 43-2, PageID # 262.

On June 29, 2015, after Wilson served the suspension, she reported back to work on Oahu for only one day. *See* Wilson Depo at 120, ECF No. 43-5, PageID # 336. Wilson says that the reason she only went back to work for a single day was that she had moved to Maui. She conceded that the arbitrator had provided that, if she wanted to work on Maui she could apply for a position there. *Id.* at 121, PageID # 337.

On or about July 7, 2015, Wilson dual filed a Charge of Discrimination with the EEOC and the HCRC, Number 486-2015-00293, claiming

race and/or national origin discrimination and retaliation. The charge stated that

she was discriminated against on June 10, 2015, the day she received the letter

reinstating her employment after the arbitration. *See* ECF No. 43-18, PageID

# 388. However, the charge clearly complains about the April 5, 2013,

termination. Wilson was issued a notice of right to sue on July 17, 2015. *Id.*,

PageID # 390.

Wilson filed this action on October 13, 2015. *See* ECF No. 1.

## III.      SUMMARY JUDGMENT STANDARD.

Under Rule 56 of the Federal Rules of Civil Procedure, summary

judgment shall be granted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134

(9th Cir. 2000). The movants must support their position concerning whether a

material fact is genuinely disputed by either "citing to particular parts of materials

in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for the purposes of

the motion only), admissions, interrogatory answers, or other materials"; or

"showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine

issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. *Id.* (*quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (*citing Matsushita Elec. Indus. Co.*, 475 U.S. at 587). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.* When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing

summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

## IV.     WILSON'S REQUEST FOR APPOINTMENT OF COUNSEL IS DENIED.

At the hearing on the present motion for summary judgment with respect to the remaining Title VII claims asserted in Counts II, III, and V, Wilson requested appointment of counsel. That request is denied.

Title VII of the Civil Rights Act of 1964 provides in pertinent part, "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant . . . ." 42 U.S.C. § 2000e–5(f)(1). In determining whether appointment of counsel is appropriate, courts examine three factors: (1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel; and (3) whether the plaintiff's claim has merit. *See Johnson v. U.S. Dep't of Treasury*, 939 F.2d 820, 824 (9th Cir.1991). These factors do not indicate that appointment of counsel is appropriate in this case.

Even if the court assumes that Wilson lacks the financial resources to pay an attorney to represent her, she fails to demonstrate sufficient effort to obtain counsel and fails to show that her claim has merit. At the hearing, Wilson indicated that she was unable to get counsel, but did not sufficiently detail her

efforts such that this court could determine the extent of her efforts to secure counsel. Additionally, Wilson has not demonstrated that her claims have merit. For example, in issuing Wilson her right to sue, the EEOC stated that it was "unable to conclude that the information obtained establishes violations of the statutes," indicating that, as of the outset of this case, Wilson had not demonstrated that her claims were meritorious to the EEOC. ECF No. 43-16, PageID # 385; 43-17, PageID # 387; 43-18, PageID # 390. Moreover, in granting Defendant's motion for summary judgment with respect to the Title VII claims, this court has now examined the merits of Wilson's Title VII claims, determining that none of the claims should go forward to trial.

Under these circumstances, Wilson's request for appointment of counsel is denied.

## V.        ANALYSIS.

Given this court's order of June 22, 2016, only the retaliation claims asserted in Counts II and III and the race and/or national origin discrimination claim asserted in Count V remain for adjudication. *See* ECF No. 24 (granting partial summary judgment in favor of Defendants with respect to Counts I (respondeat superior) and IV (Equal Pay Act)).

Count II asserts that, because she had previously filed EEOC charges, Defendants retaliated against Wilson in violation of Title VII by refusing to promote her.  *See* Complaint ¶ 37, ECF No. 1, PageID # 5.  Count III asserts that, because she had previously filed EEOC charges, Defendants retaliated against her by suspending and terminating her.  *Id.*  Count V asserts that Wilson was discriminated against because of her Puerto Rican, Spanish, and Native American heritage.  *Id.* ¶ 55.

### A.    The Court Grants Summary Judgment in Favor of Defendants With Respect to Count II.

Title VII's anti-retaliation provision generally forbids retaliation against an employee who has exercised rights under Title VII.  See 42 U.S.C. § 2000e–3(a).  Before asserting such a claim, a plaintiff must timely exhaust his or her administrative remedies.

"Title VII contains several distinct filing requirements which a claimant must comply with in bringing a civil action."  *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir.), *amended*, 815 F.2d 570 (9th Cir. 1987).  Generally, to file a claim under Title VII, a plaintiff must file a complaint with the EEOC within 180 days of the last discriminatory act.  However, that period is extended to 300 days when a plaintiff first institutes proceedings with a state or local agency. *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1082 (9th Cir. 2006).

Moreover, a Title VII action must "be filed within ninety days from the issuance of the right to sue letter by the EEOC." *Valenzuela*, 801 F.2d at 1172 (citing 42 U.S.C. § 2000e-5(f)(1)).

Count II asserts that Defendants retaliated against Wilson for her exercise of Title VII rights when they refused to promote her in September 2012. *See* Complaint ¶ 37, ECF No. 1, PageID # 5. Neither of the 2013 Charges of Discrimination complained about a failure to promote in 2012. Instead, the January 4, 2013, charge complained of being denied leave on October 8, 2012, for a family emergency and of being suspended on October 9, 2012, for making "inappropriate comments." *See* ECF No. 43-16, PageID # 384. The April 17, 2013, charge complained of her contemplated dismissal. *See* ECF No. 43-17, PageID 386. It cannot be said that Wilson exhausted her administrative remedies with respect to her failure to receive a promotion in 2012, as nothing in the record established that the failure to promote claim fell within the scope of the EEOC's actual investigation or an investigation that could reasonably be expected to have grown out of the charges. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

Even if it could be said that the EEOC could reasonably have been expected to examine the failure to promote claim given that Wilson's

"inappropriate comments" were made because Wilson was required to get a

doctor's note for calling in "sick" due to being upset at not receiving the

promotion, Wilson did not file this action within 90 days of receiving the January

14, 2013, or April 19, 2013, notices of right to sue and nothing in the record

indicates that any limitation period should be tolled.

Accordingly, the court grants Defendants summary judgment with

respect to Count II.

**B.    The Court Grants Summary Judgment in Favor of
Defendants With Respect to Count III.**

**1.    Defendants Fail to Demonstrate on the Present
Record That Wilson Did Not Timely Exhaust
Administrative Remedies With Respect to Count III.**

Count III asserts Title VII retaliation based on Defendants'

suspension of Wilson in October 2012 and termination of Wilson in April 2013,

which ultimately became a thirty-day suspension when the arbitrator ruled in June

2015, rescinding the termination but allowing the 30-day suspension. Although

Wilson received a notice of right to sue in April 2013 that allowed her to file suit

within 90 days with respect to the notice of dismissal, Wilson did not timely file

such an action. However, Wilson did file another charge of discrimination with

the EEOC and the HCRC on or about July 7, 2015, less than 300 days after the

arbitrator's ruling. She then timely filed this action within 90 days of the issuance of the notice of right to sue with respect to that charge of discrimination.

Even if Wilson failed to timely file, that failure is not a jurisdictional prerequisite to a Title VII claim, but is instead merely a statutory requirement subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). Given the lack of facts in the record with respect to the grievance procedure, this court cannot tell whether there is any equitable reason for tolling the limitation period for timely filing the retaliation claims arising out of her termination and reinstatement with a suspension. The court cannot tell, for example, whether the grievance procedure was required by the union contract or employer such that any delay is excusable. The court notes, in any event, that Wilson could not have known that the Arbitrator would rescind the termination but allow Defendants to suspend her for 30 days.

Because the suspension and termination arose from the same set of facts, the court rules that, under the circumstances presented here, Wilson exhausted her administrative remedies with respect to both (assuming that the limitation period with respect to the termination was tolled by the arbitration), as this court examines whether the bases of discrimination fell within the scope of the

EEOC's actual investigation or an investigation that can reasonably be expected to grow out of the charge.  *See B.K.B.*, 276 F.3d at 1100.

Accordingly, because the EEOC charge was timely filed on July 7, 2015, less than 300 days after the arbitrator's June 5, 2015, ruling, and because the present complaint was filed on October 13, 2015, less than ninety days after the July 17, 2015, notice of right to sue, the court examines the merits of the Title VII retaliation claim premised on Wilson's termination and suspension.

**2.    Defendants Are Entitled to Summary Judgment With Respect to Count III Because Wilson Fails to Raise a Genuine Issue of Fact With Respect to Pretext.**

Turning to the merits of the Title VII retaliation claim asserted in Count III, the court determines that, even assuming Wilson has alleged a prima facie case of retaliation, Defendants have demonstrated a legitimate, nondiscriminatory reason for suspending and terminating Wilson and she has failed to raise a genuine issue of fact with respect to pretext.  Defendants are therefore entitled to summary judgment with respect to Count III.

For purposes of a summary judgment motion, even if a plaintiff lacks direct evidence of discrimination, a plaintiff may demonstrate a retaliation claim under Title VII by applying the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Villiarimo v. Aloha Island Air,*

16

*Inc.*, 281 F.3d 1054, 1064 (9ᵗʰ Cir. 2002). Under the *McDonnell Douglas*

framework, a plaintiff must establish a prima facie case of discrimination. 411

U.S. at 802. The degree of proof required to establish a prima facie case for

purposes of a summary judgment motion is minimal. *See Coghlan v. Am.*

*Seafoods Co.*, 413 F.3d 1090, 1094 (9ᵗʰ Cir. 2005). Once a plaintiff succeeds in

presenting a prima facie case, the burden then shifts to the defendant to articulate a

"legitimate, nondiscriminatory reason" for its employment decision. *Noyes v.*

*Kelly Servs.*, 488 F.3d 1163, 1168 (9ᵗʰ Cir. 2007). "Should the defendant carry its

burden, the burden then shifts back to the plaintiff to raise a triable issue of fact

that the defendant's proffered reason was a pretext for unlawful discrimination."

*Id.*

> a. **Wilson Has Established A Prima Facie Case of Retaliation With Respect to Her Termination and Ultimate Suspension.**

To make out a prima facie retaliation claim under Title VII, a plaintiff

must show that "(1) the employee engaged in a protected activity, (2) she suffered

an adverse employment action, and (3) there was a causal link between the

protected activity and the adverse employment action." *Davis v. Team Elec. Co.*,

520 F.3d 1080, 1093–94 (9ᵗʰ Cir. 2008).

"Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to oppose an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (quotation marks and citation omitted); 42 U.S.C. § 2000e–3(a) (forbidding discrimination against employee who "opposed any unlawful employment practice prohibited by Title VII or who has made a charge, testified, assisted, or participated in a Title VII proceeding or investigation."). Wilson clearly exercised a protected activity when she filed charges of discrimination on January 4, 2013, and April 17, 2013. The January 2013 exercise of protected activity could be said to be the factual premise for Wilson's retaliation claim based on the termination effective April 5, 2013 (which morphed into a suspension following the arbitration).[2]

For purposes of the second prong of the *McDonnell Douglas* framework, an "adverse employment action" is an action that is "materially adverse" to a reasonable employee or job applicant. *Burlington N. & Santa Fe Ry.*

_____

[2]With respect to the October 9, 2012, suspension, Wilson does not identify any specific exercise of protected activity that can be characterized as the reason for the suspension. Wilson therefore fails to establish a prima facie case of retaliation with respect to the October 2012 suspension, even if that could be said to have been administratively exhausted .

*Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). An "adverse employment action" is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis*, 520 F.3d at 1089. An "adverse employment action exists" when the employer's actions are so harmful that they could dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68. Normally, "petty slights, minor annoyances, and simple lack of good manners" will not deter a reasonable worker from making a charge of discrimination, *id.*, while termination, dissemination of a negative employment reference, issuance of an undeserved performance review, and refusal to consider a plaintiff for a promotion may. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000).

The Ninth Circuit has adopted the EEOC's guidelines for what constitutes an adverse employment action in the Title VII context, ruling that an adverse employment action is any adverse treatment that "is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000); *accord Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004). Wilson's termination and ultimate suspension are clearly adverse employment actions.

With respect to the causation requirement in a prima facie case of retaliation, a court may infer causation when an adverse employment action occurs "fairly soon after the employee's protected expression." *See Villiarimo*, 281 F.3d at 1065. "Causation sufficient to establish the . . . [causal link] element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). For purposes of this motion, the court assumes that the brief period between Wilson's exercise of Title VII rights in January 2013 and the notice of possible termination in March 2013 and her actual termination effective April 2013 is sufficiently close in time to possibly infer causation. *Compare Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (four-month period between protected activity and layoff was sufficiently close to satisfy "causal link" prong), and *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (three-month period sufficient to infer causation), *with Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (no causal inference possible when nine months separated protected activity from adverse employment action).

Although Wilson was later reinstated but suspended for thirty days after an arbitration grievance procedure, that reinstatement goes to the scope of her damages, not to whether Wilson establishes a prima facie case of retaliation.

        **b.**    **Defendants Have Demonstrated a Legitimate, Nondiscriminatory Reason Supporting Wilson's Termination and Ultimate Suspension.**

Having determined that Wilson has established a prima facie case of Title VII retaliation based on her termination in April 2013 and ultimate suspension in June 2015, the court now examines whether the Defendants have established a legitimate, nondiscriminatory reason supporting their actions. This court determines that Defendants have established such a reason.

In a letter dated March 11, 2013, the judiciary informed Wilson that, because of her behavior, "we are contemplating your dismissal . . . effective at the close of business on April 5, 2013." *See* March 11, 2013, Letter from Okita to Wilson, ECF No. 43-11, PageID # 361; *see also* Okita Decl. ¶¶ 22-23, ECF No. 43-2, PageID # 261 (describing "inappropriate behavior" and "inappropriate comments" arising out of the need for a doctor's note as the reason Wilson was suspended in October 2012). The letter stated that Wilson had made 19 telephone calls to the judiciary between 8:15 and 1:15 on October 8, 2012, and that this

created a "contentious work environment." *Id.* This letter establishes a legitimate, nondiscriminatory reason for Wilson's termination and eventual suspension.

### c. Wilson Fails to Raise a Genuine Issue of Fact as to Pretext.

Wilson has made no attempt to identify anything in the record raising a genuine issue of fact with respect to pretext. Instead, Wilson's opposition focuses entirely on her medical issues and the fact that her mother was injured and died. She says, for example, that her mother fell on October 8, 2012, and died on November 29, 2012. *See* ECF No. 54 (corrected Opposition), PageID # 428. She says that her reaction to being required to get a doctor's note was due to some sort of illness, which she characterizes as so great that she was receiving Social Security Disability benefits from 1993 to 2000, and the fact that she was worried that her mother might die as a result of her fall. *See* ECF No. 52, PageID # 406.

Wilson's deposition testimony supports her contention that, in her conversation with her supervisor regarding the doctor's note, she was worried about the fall her mother had taken, as she supposedly told her supervisor that she needed all of her leave because her mother had fallen and was in the hospital. *See* Wilson Depo.. at 75, PageID # 320. However, Wilson's Mother's Certificate of Death indicates that her mother was injured in an accident on October 16, 2012, more than a week after the doctor's note incident. *See* Certificate of Death, ECF

No. 52-2, PageID # 409.  Although the exact date of Wilson's mother's fall is not clear, this court assumes for purposes of this motion that Wilson's mother fell on or shortly before October 8, 2012, such that Wilson was concerned for her mother's well-being at the time Wilson was being asked to get a doctor's note and thereafter supposedly made 19 calls to her office.

While these circumstances unquestionably caused Wilson to worry about her mother, that does not raise a genuine issue of fact as to whether Defendants' termination of Wilson in April 2013 and subsequent reinstatement with a suspension in June 2015 were a pretext for discrimination.  Instead, the circumstances simply provide a justification for Wilson's actions.  Under these circumstances, Defendants are entitled to summary judgment with respect to the Title VII claim asserted in Count III.

**C.     The Court Grants Summary Judgment in Favor of Defendants With Respect to Count V.**

Count V asserts that Wilson was discriminated against because of her Puerto Rican, Spanish, and Native American heritage. The factual basis of this claim is unclear.  Nevertheless, the court examines her possible claims, determining that they do not survive this summary judgment motion.

With respect to any possible disparate treatment claim based on race or national origin, Wilson must establish a prima facie case of such discrimination

by showing that (1) she belongs to a protected class; (2) she performed according to his employer's expectations; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside of her protected class were treated more favorably. *See Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009).

To the extent Wilson bases Count V on the failure to promote her and instead the promotion of a person who was not Puerto Rican, Spanish, or Native American, any such claim is time-barred. As discussed above, neither of the 2013 charges of discrimination complain of the failure to promote Wilson. But even if the failure to promote claim could be said to have been encompassed in one of those charges, Wilson did not timely file this action within 90 days of the notices of right to sue. Accordingly, any failure to promote claim is unexhausted. *See Valenzuela*, 801 F.2d at 1172 .

To the extent Wilson bases Count V on her termination and subsequent reinstatement and suspension, even assuming her claim was timely exhausted via her July 7, 2015, charge of discrimination, Wilson fails to demonstrate a prima facie case of race or national origin discrimination. With respect to any such disparate treatment claim, Wilson makes no effort to

demonstrate that a similarly situated person who was not Puerto Rican, Spanish, or Native American was treated more favorably. *See Nicholson*, 580 F.3d 1123.

Under these circumstances, Defendants are entitled to summary judgment with respect to Count V.

## VI. CONCLUSION.

The court grants Defendant's motion for summary judgment with respect to Counts II, III, and V of the Complaint. Because there is nothing left to adjudicate, the court directs the Clerk of Court to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, June 9, 2017.



/s/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

*Wilson v. State of Hawaii, et al.,* Civ. No. 15-00418 BMK; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNTS II, III, AND V.